UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| ANDREW JOSTEN LOVINGOOD, | ) | |
| | ) | |
| Plaintiff, | ) | 3:19-CV-00009-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| MONROE COUNTY, TENNESSEE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Monroe County, Tennessee ("Monroe County") filed a Motion for Summary Judgment [Doc. 42] supporting memorandum [Doc. 43], supporting affidavit [Doc. 44], and statement of material facts [Doc. 45], pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff belatedly filed a response in opposition [Doc. 49], to which Defendant replied [Doc. 56] and filed a motion to strike [Doc. 55]. For the reasons state herein, Defendant Monroe County's motion to strike is **DENIED**, and its motion for summary judgment is **GRANTED**. The case against Monroe County is **DISMISSED WITH PREJUDICE**.

I.   **FACTUAL BACKGROUND**

On April 19, 2014, Deputy Sheriff Bill Johnson effected a traffic stop of Plaintiff Andrew Lovingood [Doc. 1, ¶ 14; Doc. 45, ¶ 2]. During the stop, Deputy Sheriff Derrick Graves also arrived on scene [Doc. 1, ¶ 16; Doc. 45, ¶ 3]. Officers struggled with Plaintiff but eventually subdued him and transported him to the Monroe County Jail [Doc. 1, ¶ 16; Doc. 45, ¶ 3].[1] Plaintiff

---

[1]   While not specifically at issue in this case, the Court's previous Memorandum Opinion and Order [Doc. 41] on Plaintiff's Motion for Partial Summary Judgment and Defendant Graves' Motion for Summary Judgment detail the conflicting narrative of what occurred at this stop.

1

alleges that at the jail, the deputies placed him in a holding cell and beat him while handcuffed. [Doc. 1, ¶¶ 31-32; Doc. 45, ¶ 4].

Monroe County Sheriff's Department's policy is to use only reasonable force when necessary [Doc. 45, ¶ 5]. It provides: "<u>Use of Force to Arrest a Person</u>: A Deputy Sheriff may, by law, use all necessary and reasonable force, including entry into any building or property, in order to make an authorized arrest." [Doc. 43-1, pg. 111, Section XIV(A)(.05)]. It also states that "[u]sing unnecessary force against persons under arrest" is a cause for punishment, including termination or "such other punishment as the Sheriff may direct." [Doc. 43-1, pgs. 17-18, Section II(P)(u)]. Sheriff Bill Bivens affirmed that he has never enacted or ratified a policy that would approve the use of excessive force as alleged in Plaintiff's complaint. *See* [Doc. 44, ¶¶ 5-8].

The Standard Operating Procedure Manual for the jail division also limits the use of restraints to those situations in which the officer believes the inmate poses "an imminent physical threat" and requires supervisors to "closely monitor" their use [Doc. 43-2, pg. 22-23]. It provides that "[i]t is the policy of the Monroe County Jail to use restraints without excessive force and not for punishment." [Doc. 43-2, pg. 22]. Jail personnel may be disciplined for "[v]iolation of rules and regulations of the department…." [Doc. 43-2, pgs. 39-40].

Plaintiff sued these parties initially on April 8, 2015. *See Lovingood v. Johnson*, No. 3:15-cv-152 (E.D. Tenn. Apr. 8, 2015). In that suit, Plaintiff claimed Monroe County hired the officers with "little or no investigation, or grossly inadequate investigation, into their fitness to be police officers." *Id.* at [Doc. 1, ¶ 15]. He also claimed Monroe County failed to properly train the officers and refused to discipline either of them. *Id.* at ¶ 17. He nonsuited his case on January 5, 2018.

On January 5, 2019, he refiled his suit but changed his allegations. In this latest complaint against Monroe County, he again alleged inadequate training (Count III) and ratification of the

2

conduct of the individual officers based on a failure to investigate the officers' conduct (Count IV). He did not allege failure to screen or a failure to properly supervise as he had raised in his initial complaint. And, for the first time, he alleged a state law claim under Tenn. Code Ann. § 8-8-302 in which he attempts to hold Monroe County vicariously liable for the actions of Defendants Johnson and Graves.

II.  ANALYSIS

A.  Monroe County's Motion to Strike [Doc. 55]

Monroe County has filed a motion to strike Plaintiff's response because Plaintiff failed to properly respond to its statement of material facts as required by the Scheduling Order. The Scheduling Order requires a party opposing a motion for summary judgment to address each statement of material fact, by either agreeing the fact is undisputed or the fact is disputed and state why that fact is disputed. [Doc. 22, Amended Scheduling Order, pg. 3]. The Order further provides that "[i]f either party fails to file the pleading required of him/her as set forth herein, the Court may strike that party's motion or opposition, as applicable." *Id.* Plaintiff did not respond to the motion to strike. Local Rule 7.2 provides that a failure to respond to a motion may be treated as waiving any opposition to the relief sought.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of the motion [to strike] is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). Such motions, however, "are viewed with disfavor

and are not frequently granted." *Id*. at 1050 (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

In this case, the Court finds that striking Plaintiff's entire response would be overly broad and would not be fair to the resolution of this case. A "motion to strike should be granted only when the pleading to be striken [sic] has no possible relation to the controversy." *Parlak v. U.S. Immigration and Customs Enforcement*, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir. Apr. 27, 2006) (citing *Brown*, 201 F.2d at 822). Plaintiff's response addresses the pending issue before the Court and is relevant to resolving it. Accordingly, the motion is **DENIED**.

**B.     Monroe County's Motion for Summary Judgment [Doc. 42].**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

As an initial matter, in his response to the motion for summary judgment, Plaintiff avers that documents were not provided in discovery [Doc. 49, pgs. 11, 13-14]. He further states that he

4

is "attempting to obtain Affidavits" from two witnesses and "requests that this Court either: defer ruling on the Motion for Summary Judgment; deny the Motion for Summary Judgment; allow counsel for Plaintiff time to obtain the necessary affidavits or take the depositions of the witnesses to secure the necessary testimony; or such other relief as this Court may deem just and appropriate under the circumstances." [*Id*. at pg. 14]. Monroe County argues that it produced all discovery to Attorney John Eldridge during the discovery period in the first suit in 2015, and that Plaintiff did not allege that Monroe County failed to produce any requested discovery prior to the discovery closing on October 2, 2020 [Doc. 56, pg. 1; Doc. 22, First Amended Scheduling Order, May 26, 2020].

In the parties' Joint Motion to Continue Trial Date filed on January 12, 2021, Plaintiff stated "[t]he parties have engaged in discovery and as a result Summary Judgment Motions have been filed." [Doc. 52, ¶ 2]. Plaintiff only requested a continuance of the trial date due to a conflicting trial date in another federal case and the effects of the COVID-19 pandemic [*Id.* at ¶¶ 5-7]. Plaintiff did not ask to reopen discovery. During the discovery period, Plaintiff did not file any motions to compel or otherwise suggest that discovery was deficient. Instead, Plaintiff responded to the motion for summary judgment, putting forth 25 pages of argument and approximately 75 pages of attachments in opposition of Monroe County's motion. The time for discovery has passed, and Plaintiff has waived any opportunity to argue any deficiency of such. The Court declines to defer ruling on this motion.

Turning to Monroe County's motion, it has long been the law that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

5

acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Accordingly, Monroe County may be held liable under § 1983 only if Plaintiff's injuries were sustained pursuant to an unconstitutional custom or policy. *Id*.

To impose municipal liability on Monroe County then, Plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

### 1. Inadequate Training

The Court begins with Count III, in which Plaintiff claims Monroe County failed to train its deputies in the use of force against those who are "mentally and/or emotionally disturbed…." [Doc. 1, ¶ 50]. "Systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Brown v. Battle Creek Police Dept.*, 844 F.3d 556, 573 (6th Cir. 2016) (citations omitted). In this regard, Plaintiff must prove "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [County]'s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks and citations omitted).

As an initial matter, Plaintiff does not address why the training the deputies received was

6

Case 3:19-cv-00009-DCLC-HBG   Document 57   Filed 06/08/21   Page 6 of 13   PageID #: 727

inadequate.  In contrast, Monroe County Sheriff Bivens noted that any person employed by the Monroe County Sheriff's Department was "required to be trained and certified through the Tennessee Corrections Institute and all sheriff's deputies were [Peace Officer Standards and Training Commission or] POST certified and met the requirements set by the State of Tennessee." [Doc. 44, ¶ 11].  Plaintiff offers nothing to suggest that training, which meets the standards established by the State of Tennessee, is constitutionally infirm.  Plaintiff must set forth specific facts showing a genuine issue for trial on this issue.  *See Leary v. Livingston County*, 528 F.3d 438, 447 (6th Cir. 2008); *see also Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 566 (6th Cir. 2011) (finding the district court erred in when it "excused plaintiffs from their burden of coming forward with specific facts demonstrating a triable fact issue" on the inadequate training claim).  Plaintiff cannot simply rest on his pleadings.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, (1986).  That is a burden he has not carried.

But even assuming he could show the training was inadequate, Plaintiff still must show that the inadequacy is the result of Monroe County's deliberate indifference.  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019), *cert. denied sub nom. City of Cleveland, Ohio v. Jackson*, 140 S. Ct. 855, 205 L. Ed. 2d 460 (2020) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) (internal quotation marks and citation omitted).

7

Plaintiff points to "five (5) prior instances of similar unconstitutional use of force by deputies" to make out his inadequate training claim [Doc. 49, pg. 15]. First, he claims that two Monroe County deputies in 2012 pepper-sprayed an inmate, Randall Carter, who was restrained at the jail. The officers resigned and were criminally prosecuted. Carter filed a lawsuit but voluntarily dismissed it without prejudice prior to trial. *See Carter v. Goodman*, No. 3:13-cv-25 (E.D. Tenn. Mar. 6, 2015) [Doc. 59]. This case would not put Monroe County on notice of a lack of training on its part. The court did not find Monroe County's training policy was inadequate nor did the court even address the propriety of the use of the pepper-spray. Instead, Carter dismissed his suit prior to trial with no findings by the district court.

Second, Plaintiff claims jail-administrator Trent Prock tased an inmate who was asleep in the jail. However, he does not provide any citations to the record to support this incident nor does he argue why this would put Monroe County on notice of inadequate training. Fed.R.Civ.P. 56(c)(1)(A) requires a party to support their assertions by "citing to particular parts of materials in the record …." He has not done so. Third, he claims a deputy Sonny Smart "sucker punched" an inmate. Again, he does not cite to the record in support of this claim nor does he provide any details regarding this incident.

Fourth, he claims Monroe County should be on notice of its inadequate training because a school resource officer "shackled a child to a chair at the Monroe County jail" [Doc. 49, pg. 17-18]. This resulted in a civil suit being filed, *Graham v. Monroe County*, No. 3:07-cv-422 (E.D. Tenn. Nov. 7, 2017). In *Graham*, the plaintiff alleged that on October 24, 2006, a school resource officer transported the minor child to the Monroe County jail "where she was shackled and chained to a chair." [Doc. 1, ¶ 2]. The complaint alleged she was then escorted to another room where she was questioned. Monroe County answered the suit, denying anything improper occurred [Doc. 3].

In fact, Monroe County claimed that the officer restrained her because the minor had admitted to making a false police report. The case was ultimately dismissed with no judicial findings that Monroe County had violated the minor's constitutional rights.

Finally, he claims the same school resource officer used a choke hold on a special-needs child. He does not claim a lawsuit was filed as a result of this incident. He does not demonstrate the commonality of that incident to the one before the Court. Indeed, he does not provide any other information or other facts about that incident to permit the Court to conclude Monroe County would know that based on that incident its training program was inadequate.

Mistakes on the part of some of the individual officers do not mean that the City failed to adequately train them. *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("The fact that individual actors may 'occasionally make mistakes ... says little about the ... legal basis for holding the [City] liable.'")). These incidents cited by Plaintiff do not show a "history of abuse" that "clearly [put Monroe County] on notice that the training in this particular area was deficient and likely to cause injury." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Accordingly, Plaintiff has failed to show a genuine issue of material fact in this regard, and Monroe County is entitled to judgment as a matter of law on the inadequate training claim. Count III is **DISMISSED WITH PREJUDICE**.

### 2. Ratification

In Count IV, Plaintiff claims Monroe County ratified the officer's unconstitutional conduct because it "refused to discipline the Defendant Deputies for their illegal actions against Plaintiff." [Doc. 49, pg. 1]. Plaintiff alleges that "Monroe County knew through complaints made to Sheriff Bill Bivens of the use of excessive force on Plaintiff and yet no investigation into the conduct of

9

Defendants Johnson and Graves was commenced…." [Doc. 1, ¶ 56]. Plaintiff argues that Sheriff Bivens ratified the deputies' treatment of him in the incident that gave rise to this case, passing liability to Monroe County.

"An allegation of a *single* failure to investigate a single plaintiff's claim" will not establish an unconstitutional "policy" or "custom" to impose municipal liability. *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020) (emphasis in original).[2] "[A] claim based on inadequate investigation requires not only an inadequate investigation in this instance, but also a clear and persistent pattern of violations in earlier instances." *Id.* (internal quotations and citations omitted). "[T]here must be multiple earlier inadequate investigations and they must concern comparable claims." *Id.* (citations omitted). This is where Plaintiff's claim necessarily fails. Plaintiff has failed to show a clear and persistent pattern of violations concerning comparable claims.[3] "A handful of isolated excessive force complaints occurring several years before the relevant conduct do not establish a 'pattern or practice' of condoning such activity." *Estate of Hickman v. Moore*, 502 F. App'x 459, 469 (6th Cir. 2012); *see also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701, fn. 5 (6th Cir. 2006) ("We have not found any legal support for the proposition that, in the absence of deliberate indifference before a constitutional violation, a

---

[2] *Compare with Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) and *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir. 1985). These cases found that "a sheriff's failure to investigate incidents of police abuse and to discipline the officers involved may constitute ratification of the illegal acts and may amount to deliberate indifference…." *Maynard v. Jackson Cnty. Ohio*, 706 F.Supp.2d 817, 828 (S.D. Ohio 2010). However, as the *Pineda* Court notes, the Sixth Circuit has since clarified that a single failure will not constitute ratification.

[3] While it is true that "a sheriff's failure to investigate incidents of police abuse and to discipline the officers involved may constitute ratification of the illegal acts and may amount to deliberate indifference to the constitutional rights of the victims of the misconduct," Plaintiff has not alleged a failure to investigate any of the previous incidents involving Monroe County deputies. *Maynard*, 706 F.Supp.2d at 827-28.

municipality may be liable for simply failing to investigate or punish a wrongdoer *after* the violation.") (emphasis in original). Although Plaintiff argues that the Sheriff's failure to discipline the officers immediately imposes liability on Monroe County, Plaintiff would still have to show his failure was "the moving force behind the alleged constitutional violation." *Maynard*, 706 F.Supp.2d at 828. He has not done so.

Plaintiff also fails to establish causation. "A plaintiff must show that the entity's unconstitutional custom—not just the employee's unconstitutional action—caused the plaintiff's injury." *Pineda*, 977 F.3d at 495. He has not established that necessary link between any purported failure to investigate and his injury. *Id*. "[A] single failure to investigate an incident cannot have caused that incident." *Id.* (quoting *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015)). Plaintiff has not identified any series of investigative failures that would otherwise suggest a contrary conclusion. There is no genuine issue of material fact here and Monroe County is entitled to judgment as a matter of law. Count IV is **DISMISSED WITH PREJUDICE.**

### 3. Failure to Properly Screen

Plaintiff claims that Monroe County failed to "properly screen before hiring Defendants Johnson and Graves, and for failure to properly supervise those Defendants once they were hired, and for the failure to train them once hired." [Doc. 49, pg. 1 (citing Doc. 1, ¶¶ 49-53]). Plaintiff's reference here is to Count III, which claims only a "failure … to train deputies to prevent the use of excessive force during arrests and while incarcerated in the jail." [Doc. 1, pg. 9]. The Court has already addressed that claim. His Complaint pending before this court makes no reference to negligently hiring Johnson or Graves or failing to properly supervise them. In his first complaint, he did make those allegations but did not reassert them here. *See Lovingood v. Johnson et al.*, No. 3:15-cv-152 (E.D. Tenn. Apr. 8, 2015) [Doc. 1]. His claims here are not before the Court.

11

Case 3:19-cv-00009-DCLC-HBG   Document 57   Filed 06/08/21   Page 11 of 13   PageID #: 732

### 4. State Claim against Monroe County

As Monroe County notes, Plaintiff has also brought a claim pursuant to Tenn. Code Ann. § 8-8-302, which provides for municipal liability for injuries "resulting from any act … on the part of any deputy appointed by the sheriff…." Tenn. Code Ann. § 8-8-302. Monroe County notes that Plaintiff did not bring this state law cause of action when it filed his initial suit on April 8, 2015. Rather, the first time Plaintiff filed this state law claim was when he filed this suit on January 5, 2019. The incident complained of occurred on April 19, 2014. Thus, Plaintiff waited almost five years after the accrual of his state law cause of action to file suit.

Monroe County argues that this is outside the statute of limitations period. The Tennessee Court of Appeals has "observe[d], however, that § [8-8-302] contains no limitations period …." *Cross v. Shelby Cnty.*, No. W2005-01231-COA-R3-CV, 2006 WL 1005168, at *5 (Tenn. Ct. App. Apr. 18, 2006). Where "[t]here is no statute in Tennessee that specifically addresses the statute of limitations applicable to a claim ... and no decisional law that is directly on point[,]" Tennessee courts "look to the limitations periods that apply to similar types of claims and the injuries associated with them." *Blalock v. Preston Law Grp., P.C.*, No. M2011–00351–COA–R3–CV, 2012 WL 4503187, at *5 (Tenn. Ct. App. Sept. 28, 2012); see also *Spence v. Miles Lab'ys, Inc.*, 37 F.3d 1185, 1189 (6th Cir. 1994) (holding that, if a state statute "does not reference a statute of limitations or repose, we look to the 'gravamen' of the action, rather than any designation as either contract or tort, in determining what limitations period is controlling"). Monroe County argues for a one-year statute of limitations period for § 1983 claims. Plaintiff never addressed the issue.

The Court agrees with Monroe County. The statute of limitations for asserting a claim under Tenn. Code Ann. § 8-8-302 is one year. *See Clark v. Clawson*, No. 3:20-CV-00230, 2021 WL 37675, at *4 (M.D. Tenn. Jan. 5, 2021), report and recommendation adopted, No. 3:20-CV-

12

00230, 2021 WL 568017 (M.D. Tenn. Feb. 16, 2021) ("the Court applies a one-year statute of limitations to Clark's claim under § 8-8-302 in resolving Defendants' motion"). The cause of action arose on April 19, 2014. He first raised this claim against Monroe County on January 5, 2019. He did not plead a state claim under Tenn. Code Ann. § 8-8-302 in his first complaint. Accordingly, his claim against Monroe County under Tenn. Code. Ann. § 8-8-302 is time barred and is **DISMISSED WITH PREJUDICE**.

### III. CONCLUSION

Based on the foregoing, Defendant Monroe County's Motion to Strike [Doc. 55] is **DENIED**; its Motion for Summary Judgment [Doc. 42] is **GRANTED**; and all claims against Monroe County are **DISMISSED WITH PREJUDICE**.

SO ORDERED:

s/Clifton L. Corker
United States District Judge